UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| WAYNE O'KEEFE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | CRIMINAL NO. |
| | ) | 06-10078-JLT |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |


## REPORT AND RECOMMENDATION ON MOTION
## PURSUANT TO 28 U.S.C § 2255
## TO VACATE, SET ASIDE OR CORRECT SENTENCE

October 13, 2011

DEIN, U.S.M.J.

## I.  INTRODUCTION

The Petitioner, Wayne O'Keefe ("Petitioner" or "O'Keefe"), is presently serving a

151 month federal sentence for one count of attempted bank robbery and three counts of

bank robbery in violation of 18 U.S.C. § 2113(a).  The Petitioner pled guilty to the

charges on February 14, 2007 before Judge Reginald C. Lindsay, and was sentenced on

June 19, 2007.  O'Keefe has filed a motion under 28 U.S.C. § 2255 to vacate, set aside,

or correct his sentence (Docket No. 53) and an Addendum to this motion (Docket No.

60).[1]  The government opposes the motion to vacate, and argues that the motion should be summarily denied without the need for an evidentiary hearing.  (Docket No. 62).

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the motion to vacate, set aside or correct sentence, as amended by the Addendum (Docket Nos. 53 & 60), be DENIED.  No evidentiary hearing is needed.

## II.  STATEMENT OF FACTS

### Procedural Background

On February 14, 2007, the Petitioner pled guilty to one count of attempted bank robbery and three counts of bank robbery in violation of 18 U.S.C. § 2113(a).  Plea Tr. (Docket No. 47) at 37.  After a colloquy, the court, by Lindsay, J., found "that the plea of guilty to each of the charges set forth in the indictment is a knowing and voluntary plea supported by an independent basis in fact admitting each of the essential elements of the offenses charged."  Id. at 38.  O'Keefe was sentenced on June 19, 2007 to a term of imprisonment of 151 months followed by three years of supervised release, and ordered to pay restitution in the amount of $11,914 and a special assessment of $400.  (Docket No. 41).  Petitioner filed a timely notice of appeal on July 10, 2007.  (Docket No. 42).  The First Circuit Court of Appeals granted the government's motion for summary

---

[1]  The motion to vacate is Docket No. 1 in Civil Action No. 09-11820-JLT, as well as Docket No. 53 in Criminal Action No. 06-10078-JLT.  All other docket numbers refer to the criminal case.

disposition on September 18, 2008, finding that the sentence was reasonable, and that the trial court had "explicitly addressed the appellant's arguments for departure, considered the factors mentioned in 18 U.S.C. § 3553(a), and imposed a sentence within the range suggested by the advisory Guidelines." United States v. O'Keefe, No. 07-2072 (1st Cir. Sept. 18, 2008). (Docket No. 51). The United States Supreme Court denied O'Keefe's petition for a writ of certiorari on November 3, 2008. O'Keefe v. United States, 129 S. Ct 523, 172 L. Ed. 2d 381 (2008).

The Petitioner has now brought a timely pro se habeas petition pursuant to 28 U.S.C. § 2255, claiming that he was deprived of effective assistance of counsel and, as a result, gave an involuntary and unintelligent plea. Mot. to Vacate (Docket No. 53) at 3-7. Petitioner also has filed an Addendum to this petition, the timeliness of which is challenged, claiming that he is entitled to a sentence reduction for time served between February 7, 2005, the date of his arrest by state authorities, and June 19, 2007, the date of his sentencing by the federal court. Addendum (Docket No. 60) at 4. The government argues that the motion to vacate should be summarily denied pursuant to 28 U.S.C. § 2255(b) and that the Addendum should be dismissed as untimely. While this court finds that the Addendum was timely, it agrees that the motion to vacate, as amended, should be summarily denied.

Additional facts will be provided below.

### III.  DISCUSSION

The Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255 is based on his contention that he was denied effective assistance of counsel because he was misinformed about the length of his sentence and because his counsel failed to insure that he received the appropriate credit on his sentence for at least some of the time between his arrest by state authorities (February 7, 2005) and the day he was sentenced in federal court (June 19, 2007). The government has moved for summary denial of both claims. For the reasons detailed herein, this court concludes that neither of these claims is supported by the record.

A.    <u>Alleged Misinformation About the Plea</u>

Petitioner contends that he is entitled to habeas relief due to the ineffective assistance of his trial counsel, Walter Underhill. Specifically, O'Keefe claims that "Mr. Underhill advised him that he and the United States Attorney had agreed that if movant [pled] guilty to the indictment, that movant would receive a 120 months sentence, plus get jail credit time from the time he was indicted," and that this misrepresentation induced him to plead guilty. <u>Mot. to Vacate</u> (Docket No. 53) at 3-4, 6. O'Keefe further claims that the only reason he told the court that no one had promised him any particular sentence was because this was the response that his attorney had whispered in his ear at the time, and he "had been advised to give [the] answer that the court would require in order to accept the plea, rather than that which reflected the truth." <u>Id.</u> at 5. It is beyond dispute that the ineffective assistance of counsel may negate the voluntariness of a guilty plea. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203

(1985). It also is undisputed that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694, 155 L. Ed 2d 714 (2003). See also Resp. Opp. (Docket No. 62) at 19. Nevertheless, this court recommends that O'Keefe's motion to vacate be denied.

## Standard of Review

To prevail on a claim of ineffective assistance of counsel, O'Keefe must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that he was prejudiced by the deficient performance. Scarpa v. Dubois, 38 F.3d 1, 7 n.4 (1st Cir. 1994) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). In the instant case, the government concedes that "if defense counsel's performance was deficient (first prong), then O'Keefe's affidavit stating that he would have pled not guilty is enough to satisfy the prejudice prong of Strickland." Resp. Opp. at 21. Therefore, this court's inquiry will focus on whether counsel's performance satisfied the first prong of Strickland.

Although there is case law to the contrary, this court will assume, without deciding, that advising O'Keefe that he would receive a sentence of 120 months if he pled guilty, as opposed to the 151 months he received, could be sufficiently egregious so as to constitute ineffective assistance of counsel. See, e.g., Hammond v. United States, 528 F.2d 15, 18 (4th Cir. 1975) (where defendant was induced to plead guilty based on

counsel's representation that he faced a possible 95 year sentence, when in fact the maximum he could have received was 55 years, the "alleged misadvice of counsel . . . was so gross" that the defendant stated a claim of ineffective assistance of counsel. On the other hand, "[a] mistake of a few years in advice about the length of what would otherwise be a long term would not constitute ineffectiveness of counsel."). See also Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994) ("an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel."). Nevertheless, this court recommends that O'Keefe's claim of ineffective assistance of counsel be dismissed as the record simply does not support his contention that his attorney advised him erroneously that an agreement had been reached with the government, or that there was an agreement as to any specific term.

### The Record

It is well established that "facially adequate § 2255 claims may be summarily denied when the record conclusively contradicts them." United States v. Butt, 731 F.2d 75, 77 (1st Cir. 1984) (citing Domenica v. United States, 292 F.2d 483, 484 (1st Cir. 1961)). "Evidentiary hearings have been granted to § 2255 appellants who have claimed that their plea was induced by attorney misrepresentations only when the allegations were highly specific and usually accompanied by some independent corroboration." Id. at 80, n. 5. Where, as here, "a § 2255 petitioner[] claims that his lawyer was incompetent and had lied to him about the plea bargain and sentence he would receive[,]" the First Circuit has adopted the following rule:

> The accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are conclusively established by that proceeding unless and until he makes some reasonable allegation why this should not be so. Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statements.

Id. at 80 (quoting Crawford v. United States, 519 F.2d 347 (4th Cir. 1975) (internal punctuation omitted)). Thus, "a court is entitled to give weight to the defendant's statements at his change-of-plea colloquy absent a 'good reason for disregarding them.'" United States v. Miranda, — F.3d — , 2011 WL 3621600, at *7 (1st Cir. Aug. 18, 2011) (quoting United States v. Torres-Rosario, 447 F.3d 61, 67 (1st Cir. 2006)). The court will disregard the plea colloquy "only when the allegations of impairment were highly specific and usually accompanied by some independent corroboration." Id. (quoting United States v. Pulido, 566 F.3d 52, 59 (1st Cir. 2009) (punctuation omitted)). Here, O'Keefe's claim is conclusively contradicted by the record and lacks any independent corroboration. Consequently, his plea colloquy is not only "'evidential,' but sufficiently 'conclusive' to contradict his claims." Pulido, 566 F.3d at 60.

As an initial matter, O'Keefe was repeatedly advised of the importance that he answer all questions truthfully, and that his answers, and the plea, be voluntary. For example, but without limitation, Judge Lindsay advised O'Keefe at the outset of the hearing as follows:

> Because you are – you propose to plead guilty this afternoon and you are waiving a valuable right to trial by jury. **I have to**

**determine that the plea you offer is a knowing and voluntary plea**. **And by "knowing" I mean** that you understand the nature of these proceedings, that you understand the offenses with which you are charged, **that you understand the consequences of pleading guilty to those offenses**, and that you understand what rights you have and what rights you are giving up by pleading guilty. **When I say I have to determine that you're acting "voluntarily," that means that I have to determine that you are pleading guilty of your own free will because you are, in fact, guilty and not because someone has made an improper promise to you** or has attempted in any way to force you to plead guilty.

Plea Tr. (Docket No. 47) at 4 (emphasis added). Judge Lindsay further advised O'Keefe that he "should answer all of [the judge's] questions truthfully[,]" that he should not answer any question that he did not understand, or that confused him or that he did not hear clearly. Id. at 5. Specifically, O'Keefe was cautioned:

**you shouldn't just simply go through the motions with me and answer my questions the way you think you should answer them simply to get this matter concluded**. You should listen carefully to my questions, think about them and answer them truthfully.

Id. (emphasis added). O'Keefe expressly confirmed that he understood the process, and that he did not have any questions of the court. Id. at 6.

The record is clear that O'Keefe was expressly advised that no agreement existed with the government. Thus, after ascertaining that O'Keefe's medical and psychological conditions did not preclude him from entering a knowing and voluntary plea, Judge Lindsay engaged in the following colloquy with O'Keefe:

THE COURT: Are you satisfied fully with the representation and advice of counsel Mr. Underhill has given you generally in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you satisfied in particular with the advice that counsel, in his representation, has given you regarding whether you should plead guilty?

THE DEFENDANT:  Yes.

**THE COURT:  You don't have a plea agreement with the United States, is that right?  There's no plea agreement, is that right?**

**THE DEFENDANT:  No.**

**THE COURT:  Mr. O'Keefe, has anyone made any promise to you or given you any assurances in an effort to get you to plead guilty?**

**THE DEFENDANT:  No, your Honor.**

Id. at 17 (emphasis added).

With respect to the maximum amount of his sentence, O'Keefe expressly con-firmed that he had not been promised anything, and that the maximum potential penalty greatly exceeded the 10 years he now claims he was promised.  Thus, the following colloquy took place:

THE COURT:  ... I want to talk to you about the maximum penalty. Counsel follow me on this to make sure I state this correctly.

**On each of the offenses charged in the indictment, Mr. O'Keefe, you face a maximum term of imprisonment of 20 years**, a fine of 250,000 dollars, a period of supervised release of 3 years, and a special assessment of 100 dollars on each of the four counts.  **Do you understand that?**

THE DEFENDANT:  **Yes, sir.**

THE COURT:  I wanted to just tell you to take a moment, Mr. O'Keefe, to explain to you what I mean by "supervised release."

Have you ever been in the Federal system before?

THE DEFENDANT:  No, your Honor.

THE COURT:  All right.  First, off, I want to tell you there's no parole in the Federal system.  So whatever sentence you get, you serve that in full with one exception.  There is something called "good time credits."  Good time credits are earned at the rate of up to 54 days a year and those days of credits are credited after they're earned to your term of imprisonment And your prison term can be shortened by the number of good time credits you get.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  **Now, apart from the good time credits, however, you serve your term in full** ....

Id. at 18-19 (emphasis added).

The colloquy also is clear that O'Keefe was advised, and confirmed that he understood, that the court was free to enter any period of incarceration, regardless whether counsel had estimated the amount of a sentence.  As Judge Lindsay explained after describing the factors he would consider in setting a sentence:

... I do need to know from you, however, whether you and Mr. Underhill have discussed sentencing and the possibilities and how the sentencing factors that I've just described to you might apply in your case.  Have you had that discussion?

THE DEFENDANT:  Yes, I have.

THE COURT:  Okay.  I'm going to assume that somewhere in that discussion Mr. Underhill has given you an estimate of what the sentence might be or a range of sentences that you might face.  And I

-10-

don't want you to tell me that. I'm just going to assume that. **But what I want to tell you, however, is that I am certain that Mr. Underhill has given you his best advice about what sentence might be imposed, but you should understand that I make that final decision and my decision may be different from any estimate that Mr. Underhill may have given you, and that means that the sentence that I actually impose may be greater than the one he has estimated. Do you understand that?**

THE DEFENDANT: **Yes, I do.**

THE COURT: **And I can impose that sentence without letting you withdraw your plea. Do you understand that, sir?**

THE DEFENDANT: **Yes.**

Id. at 21-22 (emphasis added). In sum, the record clearly refutes O'Keefe's present contention that he only pled guilty because he understood he had a deal with the government.

Other pleadings and colloquies prior to the actual sentencing further confirm O'Keefe's understanding that the length of his period of incarceration was to be decided by the trial judge. For example, prior to the guilty plea, Probation prepared a pre-plea, presentence report in which it stated that there was no plea agreement, and that the guideline range for O'Keefe was 151 to 188 months. See Resp. Opp. at 12. Similarly, prior to sentencing, the Probation Department prepared a presentence report in which it recommended a term of imprisonment of 151 months on each count, to run concurrently with each other. PSR at 3-4. In Defendant's Sentencing Memorandum (Docket No. 38), filed with the court on June 14, 2007, the defendant, through counsel, acknowledged that

the "[t]he Probation Department's calculus of the Defendant's offense level and criminal history score places him in the 151 to 188 month Guidelines range." Mem. (Docket No. 38) at 4. In this pleading, the defendant argued that, for various reasons, the court should consider a downward departure and sentence him to 120 months. Id. at 9. The government filed its opposition to the defendant's Sentencing Memorandum on June 16, 2007, prior to the sentencing, making it clear that there was no agreement as to the length of any sentence. (Docket No. 39). Therein, the government opposed the defendant's request for a downward departure and recommended a prison sentence of 151 months. Id. at 5.

O'Keefe was sentenced by Judge Lindsay on June 19, 2007. At that time, Attorney Underhill confirmed that O'Keefe had reviewed the presentence report "extensively." Sent. Tr. (Docket No. 45) at 3-4. Judge Lindsay reviewed the basis for the Guideline range of a term of imprisonment of 151-188 months, and then gave defense counsel the opportunity to argue for a downward departure. Id. at 6-8. The government repeated its recommendation of a commitment of 151 months. Id. at 22. The defendant recommended 120 months. Id. at 25.

O'Keefe took advantage of the opportunity to address the court before sentence was imposed. Id. at 31. As his statement clearly reflects, O'Keefe understood that there was no deal in place for 120 months or otherwise. As he stated:

> I'd like to apologize to the Court for the actions that have brought
> me here today, and I would like the Court to take into consideration
> the arguments that my lawyer put forth and the fact that when I was
> arrested that I didn't try to deny responsibility for the crimes. I also
> confessed to three other robberies that they weren't even investi-

gating me for. And **I'm just asking you to take that into consideration and give me some hope for the future when you sentence me today**. I'd like to express remorse and regret for what I've done.

Id. at 31 (emphasis added). Thus, even O'Keefe's own statement, in addition to every court proceeding and filing, negates O'Keefe's claim that the court should ignore the "presumption of truthfulness" in the change of plea proceedings. See Butt, 731 F.2d at 80. Moreover, there was ample basis in the record for the sentence imposed. As Judge Lindsay explained his decision not to go below the Guideline recommendations:

> If I do not sentence Mr. O'Keefe as a career offender in the way the guidelines prescribe, I don't think I could ever sentence anybody as a career offender. Because, as I've said, I haven't seen this kind of criminal history to my recollection at any time before.
>
> So it seems to me that the guideline sentence has provided the appropriate sentence in this case. The high end is 188 months, I think since – I wouldn't be acting inappropriately, in my view, if I were to sentence Mr. O'Keefe at the high end, but I can't see what the high end would achieve that the low end of the guidelines will not achieve.
>
> I considered, as we discussed this matter, sentencing Mr. O'Keefe as if he were not a career offender, taking into account an offense level 25, Criminal History Category VI, that would result in a sentence of 137 months. I guess that's a 14-month difference between that level and what the career offender provisions require. But, as I said, I have to take into account that Mr. O'Keefe is the very definition of a career offender. And so those 14 months are significant to me in that they recognize the difference between Mr. O'Keefe and a person who is not a career offender. And it's for that reason that I'm going to impose the low end of the guideline range on Mr. O'Keefe.

Sent. Tr. at 33-34.

Finally, as the government notes, O'Keefe has cited no independent corroboration in support of his claim. This is not a case like <u>Hernandez-Hernandez v. United States</u>, 904 F.2d 758, 761 (1st Cir. 1990), for example, where the habeas petitioner's allegations of attorney misrepresentation were corroborated by affidavits of other witnesses. Rather this is "a case where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court." <u>Machibroda v. United States</u>, 368 U.S. 487, 494, 82 S. Ct. 510, 514, 7 L. Ed. 2d 473 (1962).[2] Because O'Keefe's ineffective assistance claim relating to the length of his sentence is contradicted by the record and lacks any independent corroboration, this court recommends that it be denied without hearing.

**B.    <u>Computation of Sentence</u>**

The next issue is O'Keefe's claim, advanced in his Addendum (Docket No. 60), that he is entitled to credit on his current sentence for time he spent in state custody for a state charge based on conduct which he claims is related to his federal charge. As a preliminary matter, this court must first address Respondent's argument that the Addendum is untimely. It is undisputed that under the AEDPA, O'Keefe had one year from the date on which his judgment became final to file his petition under 28 U.S.C. § 2255(f)(1).

---

[2] In <u>Machibroda</u>, unlike the instant case, the defendant filed an affidavit setting out detailed factual allegations regarding promises allegedly made by the Assistant U.S. Attorney regarding sentencing, who also allegedly expressly required that the defendant not tell his lawyer about the promises. The court ruled that an evidentiary hearing was required since the record could "cast no real light" on alleged off-the-record conversations, and the detailed and specific charges might be corroborated by circumstantial evidence. <u>Machibroda</u>, 368 U.S. at 494, 82 S. Ct. at 514.

Since the United States Supreme Court denied O'Keefe's petition for a writ of certiorari on November 3, 2008, the one year period expired on November 3, 2009.  See In re Smith, 436 F.3d 9, 10 (1st Cir. 2006) ("every circuit that has addressed the issue has concluded that a conviction becomes final – and the one-year period therefore starts to run – when a petition for certiorari is denied").  The Addendum was filed on November 16, 2009, thirteen (13) days late.  However, for the reasons detailed herein, this court finds that the Addendum relates back to the original habeas petition and, therefore, is timely.

### Relation Back Doctrine

It is well established that the "basic principles of [Fed. R. Civ. P.] 15(c) apply to amendments of § 2255 motions."  United States v. Hicks, 283 F.3d 380, 387 (2d Cir. 2002).  Under Fed. R. Civ. P. 15(c)(1) "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]"  In his original motion to vacate under § 2255, O'Keefe argued as part of his ineffective assistance of counsel claim that he had been advised that there was an agreement "that if movant [pled] guilty to the indictment, that movant would receive a 120 months sentence, plus get jail credit time from the time he was indicted[.]"  Mot. to Vacate (Docket No. 53) at 3-4 (emphasis added).  In his Addendum, he argues that "he is entitled to credit from February 7, 2005 until June 16, 2007 the day he was sentenced in Federal Court by Judge Lindsay for the Plea of Guilt[y] to the federal crime

of bank Robbery due to the fact that the initial arrest for the stolen vehicle on February 7 2005 was directly related to the F.B.I. investigation of the bank robberys [sic]." Addendum at 4. As O'Keefe has further explained, the jail credit issue raised in the Addendum is part and parcel of his ineffective assistance of counsel claim which was timely filed. Thus, O'Keefe explains, he "believes that his counsel of record Mr. Underhill was ineffective for not bringing it to the sentencing court's attention that he was entitled - or may have been - to have his over-all sentence reduced pursuant to the provisions of the United States Sentencing Guidelines § 5G1.3 because the time he spent incarcerated on his state conviction (i.e. the jail credits) was intricately intertwined and a part of the same . . . federal bank robbery offense." Pet. Resp. (Docket No. 84) at 4-5. According to O'Keefe, the Addendum was merely intended to "clarify the jail credits question at hand[.]" Id. at 5.

This court must construe O'Keefe's pro se habeas petition liberally in his favor. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). While the question is not free from doubt given the lack of specificity of O'Keefe's claim, under the circumstances presented and viewing the Addendum as a claim of ineffective assistance of counsel, this court concludes that "the original and amended petitions state claims that are tied to a common core of operative facts," as a result of which "relation back will be in order." Mayle v. Felix, 545 U.S. 644, 664, 125 S. Ct. 2562, 2574, 162 L. Ed. 2d 582 (2005). Consequently, this court concludes that the Addendum was timely filed and that it is appropriate to address the merits of O'Keefe's claim that counsel was

-16-

ineffective by failing to advise the court that O'Keefe should be given credit for time served in state custody.[3]

## Calculation of Credit

A review of the record again fails to provide support for O'Keefe's contention that his counsel erroneously failed to advise the court of a basis for reducing O'Keefe's sentence. The facts relating to his jail time are undisputed, see attachments to Docket No. 84, and are as follows:

O'Keefe was arrested for larceny of a motor vehicle by the Cambridge Police Department on February 7, 2005. This motor vehicle was used in a robbery. While in custody, a warrant was issued out of the Dorchester District Court for operating after suspended license and leaving the scene after causing property damage. O'Keefe was arraigned on the larceny charge on April 21, 2005 and given a 2 year sentence with a credit of time served of all the 73 days he had been incarcerated – February 7, 2005 through April 21, 2005. On June 21, 2005, he was arraigned on the Dorchester District Court charges and given a 60 day concurrent sentence and 3 month consecutive sentence. On March 6, 2006, O'Keefe was turned over to federal authorities on a federal writ for the bank robbery charges. While in federal custody, his state sentences continued to run,

_____

[3] As a result of this ruling, this court will not address whether O'Keefe has established that the "prisoner mailbox rule" should apply here. Under this rule, a pleading is considered filed on the date it is delivered to prison authorities for forwarding to the District Court. Houston v. Lack, 487 U.S. 266, 270, 108 S. Ct. 2379, 2382, 101 L. Ed. 2d 245 (1988). O'Keefe contends that the Addendum is timely under that rule (Docket No. 84 at 5) while the government argues that O'Keefe has failed to establish the date it was mailed. Resp. Opp. (Docket No. 62) at 29-30.

and were completed on November 19, 2006. At that time, primary jurisdiction was changed from state to federal authorities, and when Judge Lindsay imposed sentence on June 19, 2007, O'Keefe was given credit for the period November 20, 2006 forward — i.e., the period beginning on the date his state sentence had been completed and his detention under federal authorities began.[4] Thus, although O'Keefe is arguing in his habeas petition that he is seeking credit for the period February 7, 2005 through June 19, 2007, he has, in fact, received credit on his federal sentence for much of this time.

O'Keefe contends that Judge Lindsay did not know that he had the authority under USSG § 5G1.3(b)(1) to reduce his "federal sentence by the amount of time O'Keefe had served on the larceny charge because it was related conduct involving the same criminal behavior." Addendum at 6. As an initial matter, § 5G1.3(b)(1) does not apply because it relates to an adjustment to account for an undischarged term of imprisonment, and, in the instant case, O'Keefe's state sentence had been discharged at the time of his federal sentencing. See United States v. Cofske, 157 F.3d 1, 1-2 (1st Cir.1998) (per curiam) (defendant not entitled to credit under § 5G1.3 for discharged state prison term, despite undischarged term of probation). Pursuant to § 5G1.3 note 4, however:

---

[4] The period of February 7, 2005, when O'Keefe was arrested for larceny of a motor vehicle, through November 19, 2006 was credited to his state sentences. See 9/2/08 Federal Bureau of Prisons Memorandum, attached to O'Keefe's Reply (Docket No. 84) as Ex. 1. 18 U.S.C. § 3585(b) prohibits the Bureau of Prisons from crediting time to a federal sentence which had been credited to a state sentence. See U.S. v. Ross, 219 F.3d 592, 594 (7th Cir. 2000) ("§ 3585(b) forbids the BOP from giving credit for presentence custody when that credit has been applied against another sentence.").

> In the case of a discharged term of imprisonment, <u>a downward departure is not prohibited</u> if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense.

(Emphasis added). Moreover, under § 5G1.3(D), entitled "complex situations" the court is authorized to "exercise its discretion" when "faced with a complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules." Assuming, <u>arguendo</u>, that these provisions apply to the instant case, the record is clear that Judge Lindsay recognized his authority but simply decided not to take the prior state sentence into account. <u>See</u> <u>United States v. Stone</u>, 575 F.3d 83, 92 (1st Cir. 2009) (upholding sentence where although "the district court knew it could vary from the guidelines, it saw no reason to do so as it ultimately concluded that the harsh sentence fit the severe crime"); <u>United States v. DeCologero</u>, 530 F.3d 36, 70 (1st Cir. 2008) (court recognized authority to give defendant credit for prior conviction and imprisonment, but "simply did not agree with defendant that his previous incarceration for a crime to which he pled guilty should lead to a sentence reduction.").

In the instant case, the record clearly establishes that Attorney Underhill attempted to convince Judge Lindsay to give O'Keefe credit for all the time that O'Keefe had served prior to the sentencing. For example, after Judge Lindsay set O'Keefe's sentence at 151 months, defense counsel expressly requested that O'Keefe be given "credit for the time that he was being held in state custody from March 16th until — from April 29, 2005

until March 6, 2006." <u>Sent. Tr.</u> at 38.  There was an in-court discussion with the Proba-

tion Officer, during which it was clear that all parties understood that the defendant had

been convicted on April 21, 2005 "for an offense related to the bank robbery; namely, the

possession of class A and operating after suspension of license and that being a stolen

vehicle." <u>Id.</u> at 38.  Although he was apparently aware of his option to do so, Judge

Lindsay declined to give O'Keefe credit for the time served on the state sentence because,

in his view, the state charges, including automobile theft, and operating after suspension,

were different offenses than those charged in federal court, even though they "occurred at

the same time[.]" <u>Id.</u> at 39-40.  Thus, the record refutes O'Keefe's present contention

that Mr. Underhill erred in not seeking credit for time previously served or in failing to

advise Judge Lindsay of his options.

      "[D]istrict courts are afforded 'wide discretion' in reaching a sentencing decision."

<u>West v. U.S.</u>, 631 F.3d 563, 572 (1st Cir. 2011) (citing <u>U.S. v. Rivera-Gonzalez</u>, 626 F.3d

639, 647 (1st Cir. 2010)).  Where, as here, the court understood its options and "has

offered a plausible explication of its ultimate sentencing decision," there is no basis for

modifying the decision.  <u>Id.</u>  The sentence imposed by Judge Lindsay was within the

sentencing guidelines, and credit for time served on a discharged sentence is not manda-

tory under § 5G1.3.  O'Keefe's claim of ineffective assistance of counsel due to counsel's

alleged failure to obtain all the credit for jail time served to which O'Keefe was allegedly

eligible is without merit.

## IV.  <u>CONCLUSION</u>

For the forgoing reasons, this court recommends to the District Judge to whom this case is assigned that O'Keefe's motion to vacate, set aside or correct his sentence, as amended (Docket Nos. 53 and 60), be DENIED without an evidentiary hearing.[5]

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).